IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:07cr91-MHT |
| | ) | WO |
| WILLIAM LENORIES WRIGHT | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

On September 27, 2007, William Lenories Wright ("Wright") filed a motion to suppress all evidence seized and statements made during an allegedly unconstitutional search of his pickup truck.  (Doc. No. 30.)  Wright asserts that (1) the Alabama State Troopers did not have the authority to conduct an inventory search of his vehicle because he was merely detained at the scene on suspicion of driving under the influence of alcohol at the time the search began; (2)   the search of the interior of the truck was not an inventory search but "merely a ruse" to rummage through his vehicle; (3) Trooper James Hendricks exceeded his authority when he opened a Crown Royal bag and seized its contents; and (4) any statements made after his arrest for carrying a concealed weapon without a license are inadmissible because a large amount of time passed before Trooper Hendricks read him his rights.  On October 10, 2007, the court held an evidentiary hearing on the defendant's motion to suppress.  Based on the evidence presented during that hearing, the court concludes that the motion to suppress is due to be denied.

**II.  FACTS**

During a rainy evening on January 15, 2007, Trooper Hendricks was dispatched to the scene of a one-vehicle accident near the 195 mile marker of Interstate 85 in Autauga County. At the scene, Hendricks noticed that Wright was seated in the driver's seat, that a woman was seated in the passenger's seat, and that Wright's pickup truck was stuck in the mud in the middle of the median.  Hendricks parked his patrol car along the side of the interstate, and Wright left his truck, walking towards its rear.  When Hendricks got near to Wright, he noticed a strong odor of alcohol on Wright's breath.  Hendricks asked Wright for his driver's license which Wright said was suspended.  During this discussion, Hendricks noticed that Wright's speech was slurred. Because of the rain and the conditions of the ground, Hendricks was unable to administer a field sobriety test.   However, a preliminary breath test administered with a small portable machine indicated that Wright had a blood alcohol content of 0.11%.  Trooper Hendricks handcuffed Wright, advised him that he was being "detained" under suspicion for driving under the influence of alcohol, and placed him in the backseat of the patrol vehicle.

The passenger of the vehicle, Queen Davis ("Davis"), complained of a shoulder injury and also indicated that she did not have her license with her.  Therefore, consistent with departmental regulations, Hendricks called for a wrecker service to transport the truck from the interstate median to an impoundment lot.

Before the wrecker arrived, Deputy McDaniel, another state trooper, arrived on the scene.  Davis was still sitting on the passenger's side of the truck's bench seat with a blanket

and jacket covering her lap. Hendricks went to the passenger's side door and asked Davis to get out of the truck. From the driver's side of the vehicle Deputy McDaniel leaned across the front seat and pulled the blanket and jacket from Davis' lap. As the blanket and jacket were moved away, Hendricks saw a High Point 9-millimeter semiautomatic pistol laying on the bench seat between the driver's seat and Davis' seat. Hendricks returned to his patrol car and asked Wright if he had a license to carry a concealed weapon. Wright responded, "No." Trooper Hendricks advised Wright that he was under arrest for carrying a concealed weapon without a license and read him his *Miranda* rights.[1] After Wright indicated that he understood his rights, Trooper Hendricks asked him if he was the owner of the pistol and whether there were any narcotics in the vehicle. Wright stated that the gun belonged to his brother and that there were no narcotics in his truck.

Hendricks returned to the pickup truck and continued searching the vehicle. When he moved the driver's seat forward, he found a purple Crown Royal bag sitting behind the seat. He opened the bag and discovered a rock-like substance which appeared to be crack cocaine and a leafy substance which appeared to be marijuana. At some point, Trooper Hendricks completed an inventory form, indicating that the pistol and the contents of the bag were seized. During subsequent laboratory testing, forensic officials concluded that the seized substances included 11.79 grams of crack cocaine and 9 grams of marijuana.

### III. DISCUSSION

---

[1] Trooper Hendricks also advised Davis of her *Miranda* rights. Davis also indicated that she had no knowledge of the pistol or illegal drugs.

3

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Amend IV. The Supreme Court has held that searches and seizures conducted absent a search warrant granted by a judicial officer are per se unreasonable under the Fourth Amendment, unless they fall within a limited set of well-defined exceptions. *Katz v. U.S.*, 389 U.S. 347, 357 (1967). The record demonstrates that the search of Wright's car falls within two exceptions to the warrant requirement.

### A. An Inventory Search

The officers' search of the vehicle was justified under the inventory-search exception to the warrant requirement. In *Sammons v. Taylor*, 967 F.2d 1533 (11th Cir. 1992), the court defined the parameters of this exception as follows:

> Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of "something other than suspicion of evidence of criminal activity." If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria.

*Id.* at 1543. Moreover, "if an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found" inside the vehicle. *U.S. v. Grossman*, 233 Fed.Appx. 963, 968 (11th Cir. 2007) (quoting *U.S. v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980)). Three interests justify this exception, namely (1) protection of the owner's property found in the vehicle, (2) protection of the police from false claims of lost possessions, and (3) protection of the police from potential danger. *Id.*

During the suppression hearing, Trooper Hendricks testified that Alabama State Troopers are required to remove a vehicle from the interstate when a driver appears to be under the influence of alcohol or is otherwise unavailable. After determining that Wright did not have a license, that he appeared to be intoxicated and that Davis was injured and was unable to produce a license, Trooper Hendricks called a wrecker to impound Wright's truck. Consequently, Trooper Hendricks' decision to impound the vehicle was made on the basis of standard criteria. *See Sammons*, *supra*; *Grossman*, *supra*. *See also Michigan v. Thomas*, 4558 U.S. 259, 261-62 (1982) (holding that officers were justified in conducting an inventory search of vehicle where respondent was placed under arrest and the other occupant of the car was too young to legally drive). Trooper Hendricks also testified that state troopers are required to conduct an inventory search, including the search of bags or other storage containers, prior to impounding a vehicle. Thus, the officers' removal of the coat and blanket, as well as the search of the Crown Royal bag, were also justified. *See Sammons*, *supra*; *Grossman*, *supra*.

In short, Hendrick's conclusion that there was no one available to lawfully drive the vehicle is amply  supported by the facts and under the circumstances was reasonable. Therefore, under *Sammons* the impoundment of the vehicle was proper because it was made on the basis of standard criteria and not on suspicion of criminal activity. The regulations under which Hendricks operated required removal of the vehicle from the interstate; therefore, his decision to conduct the inventory search was reasonable as was the manner in

which he conducted it.[2]

During the evidentiary hearing, Hendricks testified that he began the inventory search before he arrested Wright. Even though the facts show that the drugs were found after Wright was arrested as more fully explained below, Wright attempts to capitalize on when the inventory search began because he contends that an "inventory search is conducted during and after an arrest." (Wright Mot. Suppress (doc. # 30) at 2) Wright, therefore seems to argue that the only valid reason for impounding a vehicle must be related to an arrest. That argument is infirm. Certainly, an arrest will support impoundment but, as here, impounding a vehicle can also be consistent with non-investigatory duties, including reasonable community caretaking tasks. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976); *Lockhart-Bembery v. Sauro*, 489 F.3d 69, 75 (1st Cir. 2007).[3]    Hendricks' decision to impound Wright's vehicle made before Wright was arrested was reasonable under the circumstances. Consequently, the defendant's motion to suppress evidence seized from the vehicle should be denied.[4]

_____

[2]Wright suggests in his motion that Hendrick's search of the Crown Royal bag exceeded his authority and was done only for the purpose of finding evidence of criminal conduct. This argument is specious. The evidence establishes that in conducting an inventory search officers are required to list all items of value. Obviously valuable items could be placed in the Crown Royal bag. The search of the bag as part of the inventory was reasonable.

[3]The question of when police may impound a vehicle is discussed at length in *Sammons v. Taylor*, 967 F.2d 1533 (11th Cir. 1992). However, the discussion is based on the circumstances of a driver's arrest, and not other conditions which warrant impoundment.

[4] Within his argument concerning the lawfulness of the inventory search, Wright asserts that "[a]ny statements he made immediately following this arrest are inadmissible because Mr. Wright was not read his Miranda rights until after a large amount of time had passed. The officers arrested Mr.

(continued...)

## B.  Search Incident to an Arrest

Wright argues that, because Trooper Hendricks informed him that he was being "detained under suspicion" of driving under the influence, the officers did not have authority to conduct the initial search of his vehicle.  The essence of this argument is that Wright was not under arrest and, therefore, the search could not be justified as incident to an arrest.  It is correct that the character of a seizure as an arrest or as a detention under reasonable suspicion "depends on the nature and degree of the intrusion, not on whether the officer pronounces the detainee 'under arrest.'" *U.S. v. Diaz-Lizaraza*, 981 F.2d 1216, 1221 (11th Cir. 1993).   The facts show that after Hendricks concluded that Wright had been drinking alcohol, Wright was handcuffed and placed in the back of a patrol car which was parked alongside Interstate 65.  A person is "seized" for Fourth Amendment purposes only if "a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).   And, "the fact that police handcuff the person ... does not, as a matter of course, transform an investigatory stop into an arrest.".  *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir.1995).   Rather, the following factors are relevant to determining whether a seizure has occurred:  (1) the law enforcement purposes served by the detention, (2) the

---

[4](...continued)
Wright, finished searching the car, then looked up the pistol to determine if it was stolen before they read Mr. Wright his Miranda rights."  (Doc. No. 30, p. 3.)  During the suppression hearing, Trooper Hendricks testified that immediately after discovering the pistol during the initial search of the front passenger's seat of Wright's vehicle, he returned to the patrol car and asked Wright if he had a permit to carry a concealed weapon.  He further testified that, when Wright stated that he did not have a permit, Trooper Hendricks informed him that he was under arrest for carrying a concealed weapon and advised him of his *Miranda* rights.  Thus, it is clear that the brief moment between the initial search and arrest and the reading of Miranda rights did not render the statements inadmissible.

diligence with which the police pursued the investigation, (3) the scope and intrusiveness

of the detention, and (4) the duration of the detention. *United States v. Acosta*, 363 F.3d

1141, 1145-46 (11th Cir.2004).  Indeed, in *Acosta*, the court remarked that

> an investigatory stop does not necessarily ripen into an arrest because an
> officer draws his weapon, *United States v. Roper*, 702 F.2d 984, 987-88 (11th
> Cir.1983), handcuffs a suspect, *United States v. Hastamorir*, 881 F.2d 1551,
> 1557 (11th Cir.1989), orders a suspect to lie face down on the ground,
> *Courson v. McMillian*, 939 F.2d 1479, 1492-93 (11th Cir.1991), or secures a
> suspect in the back of a patrol car, [*United States v.]Gil*, 204 F.3d [1347,] at
> 1351 [(11th Cir. 2000)]. While restriction on freedom of movement is a factor
> to be taken into account in determining whether a person is under arrest, it
> alone is not sufficient to transform a *Terry* stop into a de facto arrest.
> *Hastamorir*, 881 F.2d at 1556.

363 F.3d at 1147.

Based on the totality of the circumstances, the court concludes that at the time

Hendricks asked Wright about the permit, Wright was not under arrest.  Wright was under

investigatory detention concerning whether he was unlawfully driving under the influence

of alcohol.  Because of the conditions at the scene of the accident, Hendricks could not

properly evaluate Hendricks condition to confirm his existing suspicions.  There are no facts

suggesting that Hendricks was not diligent in pursuing his investigation.   When he

concluded that Wright and the passenger could not drive the vehicle, he called for a wrecker

and began the process of inventory.  As to the third factor, none of the officers' actions at

the scene exceeded what was minimally necessary to ensure safety.  Here Hendricks had a

reasonable basis to suspect Wright was intoxicated and the actions Hendricks took were

reasonably related to protection of the officers as well as Wright.  To put it bluntly, if the

officers had allowed an intoxicated person to wander in the interstate's median in the rain, they properly would have been subject to condemnation. Finally, the duration of the detention was reasonable under the circumstances.

However, once Wright admitted that he did not have a permit for the pistol, probable cause for his arrest existed.

> "'For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances.' *Lee* [*v. Ferraro*], 284 F.3d [1188,] 1195 [(11th Cir. 2002)].l "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee*, 284 F.3dat 1195 (internal quotation marks and citations omitted) (alteration in original).

*U.S. v. Dunn*, 345 F.2d 1285, 1290 (11th Cir. 2003), *quoting Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

The facts show that as soon as Wright admitted he had no permit, Hendricks told Wright he was under arrest and read him his *Miranda* rights. Wright's various arguments are untenable. Officers may conduct searches incident to an arrest. The Supreme Court, in *New York v. Belton*, 453 U.S. 454 (1981), specifically held that

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. If follows from this conclusion that the police may also examine the contents of any containers found within

9

the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach.

*Id*. at 460.[5]  *See also Florida v. Jimeno*, 500 U.S. 248, 251 (1991);  *U.S. v. Diaz-Lizaraza*, 981 F.2d 1216, 1222 (11th Cir. 1993).

The Crown Royal bag was found and searched *after* Wright was arrested and after he was advised of his rights.  The search was incident to Wright's arrest; therefore, it was consistent with the law.

## CONCLUSION

For the reasons as stated, the court finds that the defendant's rights secured by the Fourth Amendment were not violated.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before November 26, 2007.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District

---

[5]The Court defined container as "any object capable of holding another object."  *Id*. at 460, n.4.

10

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of November, 2007.

_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

11